E-filed in the Office of the Clerk
for the Business Court of Texas
12/20/2024 8:44 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0004

2024 Tex. Bus. 8

*Note: The syllabus was created by court staff and is provided for the convenience of the reader.  It is not part of the Court's opinion, does not constitute the Court's official description or statement, and should not be relied upon as legal authority.*



**THE BUSINESS COURT OF TEXAS**
**ELEVENTH DIVISION**

| | | |
|---|---|---|
| Lone Star NGL Product Services LLC, | § § § | |
| *Plaintiff,* | § | |
| v. | § | Cause No. 24-BC11A-0004 |
| EagleClaw Midstream Ventures, LLC and CR Permian Processing, LLC, | § § § | |
| *Defendant.* | § § | |

---

**SYLLABUS**

---

*This opinion addresses the removability of actions to the Texas Business Court that were filed before September 1, 2024, where the Parties have entered into a post-September 1, 2024 written agreement that the Court has jurisdiction of the case, and the Parties have pleaded jurisdiction under Texas Government Code Section 25A.004(d).  The Court concludes that it lacks subject-matter jurisdiction over this action because Section 8 of House Bill 19 limits the applicability of Texas Government Code Chapter 25A to "civil actions commenced on or after September 1, 2024."  Per the request of the Parties, the Court further certifies the controlling question of law discussed herein for a permissive interlocutory appeal under Texas Civil Practice & Remedies Code Section 51.014(d).  To the extent that the Court has the authority to do so, the Court's remand order is stayed pending the resolution of the Parties' permissive interlocutory appeal.*



**THE BUSINESS COURT OF TEXAS**
**ELEVENTH DIVISION**

| | | |
|---|---|---|
| Lone Star NGL Product Services LLC, | § § § | |
| *Plaintiff,* | § | |
| v. | § § | Cause No. 24-BC11A-0004 |
| EagleClaw Midstream Ventures, LLC and CR Permian Processing, LLC, | § § § | |
| *Defendant.* | § | |

**OPINION AND ORDER**

## I. INTRODUCTION

¶1     Before the Court is (1) the Joint Notice of Removal by Plaintiff Lone Star NGL Product Services LLC ("Lone Star"), Defendant EagleClaw Midstream Ventures, LLC, and Defendant CR Permian Processing, LLC (collectively herein, the "Parties") filed September 17, 2024; (2) the Parties' Joint Brief in Support of Removal to Business Court filed October 16, 2024 ("Joint Brief"); and (3) Lone Star's Additional Brief in Support of Removal to Business Court filed November 4, 2024 ("Lone Star Brief").  The Court held a hearing on this matter on November 12, 2024.  Having considered the Parties' arguments and the relevant law, and subject to the Court's stay of this Order, the Court **ORDERS** that

this suit be remanded to the district court and certifies the controlling question of law discussed herein for permissive interlocutory appeal under Texas Civil Practice & Remedies Code Section 51.014(d). To the extent that the Court has the authority to do so, the Court **STAYS** the remand order contained herein pending the resolution of the Parties' permissive interlocutory appeal under Texas Civil Practice & Remedies Code Section 51.014(e).

## II. PROCEDURAL BACKGROUND

¶2 Pending first for years in the 61st Judicial District Court of Harris County, this lawsuit involves past and ongoing compliance with two natural gas purchase agreements that prescribe daily obligations to sell Y-Grade expiring in 2026.[1] According to the Parties, Lone Star has paid more than $100 million for Y-Grade sold by Defendants under the subject agreements. Lone Star will continue to be invoiced for Y-Grade delivered by Defendants through the remaining life of the agreements.[2] Since Lone Star filed its original petition on May 20, 2021, the Parties have engaged in robust litigation of the underlying substance of this "multi-hundred-million-dollar dispute,"[3] and Defendants

---

[1] Joint Brief at 2.

[2] *Id.* at 9.

[3] *See* Transcript of Record at 13, *Lone Star NGL Product Services LLC v. Eagle Claw Midstream Ventures, LLC*, No. 24-BC11A-0004 (Tex. Bus. Ct. Nov. 12, 2024) (hereinafter, "Transcript of Record") (quotation regarding the amount in controversy). Per the Parties' Joint Brief, there were no fewer than five discovery motions pending at the time of removal, and a discovery master has been appointed to manage disputes regarding certain third-party discovery. Joint Brief at 5–6 n. 2. Following removal, the Parties have continued engaging vehemently over issues relating to apex depositions and discovery sought in out-of-state litigation.

have incurred over $3 million in attorneys' fees.[4]  When this Court first opened for business on September 1, 2024,[5] this case was 1,200 days old.[6]

¶3     On September 13, 2024, the Parties entered into a Rule 11 Agreement (defined by the Parties as the "Subsequent Agreement") making "clear that authority, jurisdiction, and venue exists in the Texas Business Court."[7]  Pertinent portions of the seven-page Rule 11 Agreement[8] are set forth below:

> The Parties agree that the Current Lawsuit, including all claims and causes of action asserted as of the Effective Date of this Agreement, is within the jurisdiction of the Texas Business Court, as established by Chapter 25A of the Texas Government Code. The Parties also agree that they are subject to personal jurisdiction in the Texas Business Court.
>
> The Parties acknowledge that this Agreement is meant to satisfy the requirements of Section 25A.004 of the Texas Government Code as a "subsequent agreement that the business court has jurisdiction over the action."
> . . .
> The Parties intend that this Agreement—executed after September 1, 2024— is to allow the Current Lawsuit to be removable to the Texas Business Court.

---

[4] Defs.' Mot. for Protection and Mot. to Quash Dep. of Joseph Payne Under the Apex Dep. Doctrine at 5 n. 9 (filed in this Court on November 29, 2024, following removal).

[5] *See* Tex. H.B. 19, § 5, 88th Leg., R.S. (2023) ("Except as otherwise provided by this Act, the business court is created September 1, 2024.").

[6] In the Spring of 2021, the Bill that created this Court and its jurisdiction—House Bill 19 (herein, "H.B. 19" or "the Bill")—had not yet been filed in the Texas House of Representatives.  Tex. H.B. 19, 88th Leg., R.S. (2023) "Bill Stages," TEXAS LEGISLATURE ONLINE, https://capitol.texas.gov/BillLookup/BillStages.aspx?LegSess=88R&Bill=HB19 (last visited Dec. 2, 2024) (H.B. 19 was filed in the House of Representatives on February 28, 2023, and was signed by Governor Greg Abbott on June 9, 2023); *see* Jack Buckley DiSorbo, *A Primer on the Texas Business Court*, 76 BAYLOR L. REV. 360, 384–87 (2024) (discussing the passage of H.B. 19 and S.B. 1045 in the 2023 legislative session).  When Governor Abbott signed H.B. 19 into law on June 9, 2023, the Bill included a limiting provision, Section 8, which states: "The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024."  Tex. H.B. 19 at § 8.

[7] Joint Brief at 3.

[8] "[T]he parties entered into a September 13th agreement.  It is a seven-page-long agreement choosing this Court's forum, choosing this Court as venue, waiving personal jurisdiction challenges, and giving this Court all of the jurisdictional trappings that the parties are allowed to give the Court."  Transcript of Record at 11.

In the event it is determined that the Texas Business Court does not have the authority to hear the Current Lawsuit, the Parties also intend this provision to allow the Current Lawsuit to be non-suited without prejudice and refiled in the Business Court as the Business Court Lawsuit.[9]

. . .

"Primary Intent": The Parties intend this Agreement to be interpreted to afford the broadest possible reservation of the Parties' rights to assert any claims, causes of action, and/or defenses in the Business Court that were or could have been asserted in the Current Lawsuit as of the Effective Date.

"Secondary Intent": The Parties also intend for this Agreement to be interpreted consistent with ensuring the Business Court has jurisdiction over the Current Lawsuit.[10]

As the Parties elucidate, "the Subsequent Agreement was not merely an agreement to remove the case to Business Court. Instead[,] the Subsequent Agreement reflects a *negotiated, holistic agreement* between the Parties that the dispute will be adjudicated by the Business Court."[11] The Parties succinctly express their intentions and requisite methodology at the outset of their Joint Brief:

The Subsequent Agreement also contemplates nonsuiting this dispute and re-filing an identical lawsuit in the Business Court if the Court remands the case to the 61st Judicial District Court. Per the Parties' agreement, this dispute will be heard by the Business Court. But remanding the three and a half year old case now creates unnecessary hurdles that would otherwise be avoided if this removed lawsuit is permitted to proceed.[12]

---

[9] Joint Brief at Exhibit 1 (II. Agreement to Jurisdiction of the Texas Business Court).

[10] *Id.* at Exhibit 1 (XI. Intent of Agreement).

[11] Joint Brief at 3 (emphasis added).

[12] *Id.* at 2, n. 1. Scrutiny of the Parties' Rule 11 Agreement and its contingencies reveals an appreciation of the potential ramifications of utilizing the newly created Chapter 25A removal procedures in a pre-September 1, 2024 action. Of note, significant legal commentary, albeit neither authoritative nor dispositive, existed on this subject prior to September 1, 2024. *See* MEETING OF THE TEX. SUP. CT. ADVISORY COMM., 35552:4–15 (Oct. 13, 2023) (transcript available at https://www.txcourts.gov/media/1457501/23-10-13-scac-transcript.pdf) (last visited Dec. 3, 2024) (Supreme Court Advisory Committee discussing that existing cases would have to be nonsuited and re-filed to be subject to the Court's jurisdiction); Lonny Hoffman, *Editor's Comments*, 106 THE ADVOCATE 3 (Spring 2024) ("Our ambition with this volume was to anticipate the most pressing questions and to *tentatively suggest* some answers.") (emphasis added); Senator Bryan Hughes & Trey Cox, *Trailblazing for Tomorrow: The Texas Business Court's Progressive Revamp of the State Judicial System*, 106 THE ADVOCATE 18, 19 (Spring 2024) ("Further, existing matters will not suddenly be thrust into a tumultuous mass removal, as HB 19 stipulates the TBC will apply only to those civil actions commenced on

¶4 On September 17, 2024, the Parties filed their Joint Notice of Removal to the Business Court. The pleaded basis for the Business Court's jurisdiction over the suit was Section 25A.004(d) of the Texas Government Code, which states:

> (d) The business court has civil jurisdiction concurrent with district courts in the following actions in which the amount in controversy exceeds $10 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs:
>
> (1) an action arising out of a qualified transaction;[13]
>
> (2) an action that arises out of a contract or commercial transaction in which the parties to the contract or transaction agreed in the contract or a ***subsequent agreement*** that the business court has jurisdiction of the action, except an action that arises out of an insurance contract; . . . .

TEX. GOV'T CODE § 25A.004(d)(1)–(2) (emphasis added). In their Notice of Removal, the Parties ascribe outsize meaning to the timing of their Rule 11 Agreement, stating "[c]rucially, that 'subsequent agreement' was entered into on September 12, 2024—***after*** the Business Court began operating on September 1, 2024."[14]

¶5 By its order of September 26, 2024, the Court directed the Parties to file briefing concerning the propriety of this suit's removal to the Texas Business Court and

---

or after September 1, 2024."); Bryan O. Blevins, Jr. & Ashlynn Wright, *A Business Court*, 106 THE ADVOCATE 21, 23 (Spring 2024) ("Presumptively, this provision would not allow a case filed before September 1, 2024, to be removed, nor an action that does not meet the subject[-]matter jurisdiction of the Business Court.").

[13] "'Qualified transaction' means a transaction, other than a transaction involving a loan or an advance of money or credit by a bank, credit union, or savings and loan institution, under which a party: (A) pays or receives, or is obligated to pay or is entitled to receive, consideration with an aggregate value of at least $10 million; or (B) lends, advances, borrows, receives, is obligated to lend or advance, or is entitled to borrow or receive money or credit with an aggregate value of at least $10 million." TEX. GOV'T CODE § 25A.001(14).

[14] Joint Notice of Removal at 2 (emphasis in original).

regarding the Court's authority and jurisdiction to hear the suit. On October 16, 2024, the Parties filed the Joint Brief.

¶6    On October 18, 2024, the Court invited further briefing from the Parties regarding what effect, if any, Section 8 of [this Court's enabling legislation,][15] H.B. 19[16] has on the Court's authority to hear this case. On November 4, 2024, Lone Star filed the Lone Star Brief. The Court held a hearing on this matter on November 12, 2024.

### III. THE PARTIES' ARGUMENTS

¶7    In their briefs, the Parties presented a series of arguments in favor of removal, untempered by the usual adversarial process. The Parties' jurisdictional arguments are both rooted in the text of Chapter 25A:

i.    Texas Government Code Section 25A.004(d)(2) gave the Parties the right to agree that the Business Court has jurisdiction of the action—or to "create jurisdiction in the Business Court"—notwithstanding any "effective date"[17] provisions included in the Bill.[18]

ii.   This dispute concerns a qualified transaction under Texas Government Code Section 25A.004(d)(1); and complies with all other statutory requirements for the exercise of jurisdiction.[19]

---

[15] *See* Procedural Background, *supra* note 6.

[16] *See* Tex. H.B. 19 at § 8 ("The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024").

[17] Of note, the true effective date provision of H.B. 19 is Section 9. *See id.* at § 9 ("This Act takes effect September 1, 2023.").

[18] *See generally* Joint Brief at 4–5; Lone Star Brief at 2–5. At the hearing, the Parties argued, "Section 8 as an effective date is not a subject-matter limitation on the Court. As such, it's a limitation that the parties can agree around." Transcript of Record at 12. The Parties believe that "[c]onsent cases are fundamentally different than non-consent cases." *Id.* at 17. "Section 8 is a safeguard for parties who are already embroiled in litigation and don't consent to be in business court." *Id.* at 31. "It is not a broad all-encompassing effective date that precludes any application of House Bill 19 prior to September 1, 2024, over the parties' consent." *Id.* at 36. "The Subsequent Agreement is entitled to be enforced in this Court, pursuant to Texas' paramount public policy favoring freedom of contract, as envisioned by the Texas Legislature in House Bill 19." Lone Star Brief at 5. In essence, according to the Parties, "[w]hen there is consent between the parties—that is between the plaintiffs and the defendants—does jurisdiction exist for cases that were commenced before September 1st, 2024? The answer to that question is irrefutably yes." Transcript of Record at 17.

[19] Joint Brief at 9–11.

¶8     Additionally, the Parties articulated that Section 8 of H.B. 19—which reads "[t]he changes in law made by this Act apply to civil actions commenced on or after September 1, 2024"—presents no bar to this Court's ability to adjudicate this dispute:

i.      Section 8 of House Bill 19 does not limit the Business Court's jurisdiction to post-September 1, 2024 cases, owing to the omission of the word "only" from Section 8. In other words, if the Texas Legislature wanted the Business Court's jurisdiction to be limited to civil actions commenced on or after September 1, 2024, Section 8 would have read "The changes in law made by this Act apply **only** to civil actions commenced on or after September 1, 2024."[20]

ii.     As Section 8 only applies to "changes in law made by" H.B. 19, Lone Star argues that Sections 1 through 3 of House Bill 19 contain changes in law, but sections 4 through 7 do not. They argue that Section 5, which unambiguously creates the Business Court,[21] also vests the Business Court with "subject[-]matter jurisdiction to adjudicate this dispute."[22]

iii.    In the event Section 8 does limit the Court's jurisdiction, Section 8 can be waived by the Parties. Because the Parties agree to the jurisdiction of the Business Court, they will be estopped from arguing it was wrong for the Court to adjudicate this dispute under the doctrines of waiver and invited error. In making this argument, the Parties affirmatively allege that the effective-date restrictions in Section 8 are not "unwaivable subject-matter jurisdiction barriers."[23]

¶9     Finally, the Parties make an appeal solely based on the alleged potential consequences of a remand. Because the Parties have agreed to non-suit and refile this case in the event of a remand, remanding this case will not keep the dispute out of the Business Court. Purportedly, however, a remand will cause significant difficulties in the discovery process and increase costs for all Parties.[24]

---

[20] Lone Star Brief at 6–9.
[21] *See* Tex. H.B. 19 at § 5 (stating, in its entirety, "Except as otherwise provided by this Act, the business court is created September 1, 2024").
[22] Lone Star Brief at 5–6.
[23] Joint Brief at 7–8; Lone Star Brief at 9–10.
[24] Joint Brief at 5–7.

¶10    At the November 12, 2024 hearing, the Parties appeared to argue beyond the briefing.  In essence, because (i) portions of the "effective date" provisions of H.B. 19 and S.B. 1045 (which created the Fifteenth Court of Appeals) are nearly identical; and (ii) the Fifteenth Court of Appeals has accepted transfers of pre-September 1, 2024 cases, the Parties argue that no bar to this Court's exercise of jurisdiction over pre-September 1, 2024 removals exists.[25]

¶11    In keeping with their elaborate strategy, the Parties have also sought the Business Court's first permissive interlocutory appeal.  Specifically, the Parties request that, in the event the Court finds that it lacks jurisdiction over this case, the Court certify a permissive interlocutory appeal on the following question: "[C]an a civil action that was commenced before September 1, 2024 be removed to Business Court where the parties entered into a subsequent agreement expressly consenting to the jurisdiction of the Business Court?"[26]

## IV. LEGAL STANDARD

¶12    For every judicial proceeding, "subject-matter jurisdiction must exist before we can consider the merits," and a court must examine its jurisdiction "any time it is in doubt."  *Tex. Propane Gas Ass'n v. City of Houston*, 622 S.W.3d 791, 797 (Tex. 2021) (quoting *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 774 (Tex. 2020)); *see also Tex.*

---

[25] Transcript of Record at 11–12.  Beyond the arguments discussed in the body of the opinion, Lone Star also sought to ventilate the effect of "an August 13, 2024 memorandum from the Office of Court Administration to Texas District and County Clerks regarding the 'Creation of the Business Court, Effective September 1, 2024.'"  Lone Star Brief at 9.  Lone Star argues that pronouncements from the Office of Court Administration are irrelevant to the Court's authority to hear the case.  *Id.*  The Court does not base this opinion on the OCA memorandum.  *Cf.* Citations to Legal Commentaries, *supra* note 12 (acknowledging that the Bar's discussion of Section 8 is neither dispositive nor authoritative).
[26] Joint Brief at 11–12.

*Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993) ("Subject[-]matter jurisdiction is never presumed and cannot be waived."). "Whether a court has subject[-]matter jurisdiction is a question of law." *Tex. Disposal Sys. Landfill, Inc. v. Travis Cent. Appraisal Dist.*, 694 S.W.3d 752, 757 (Tex. 2024).

¶13 A Notice of Removal to Business Court must plead facts to establish the Business Court's authority to hear the action. TEX. R. CIV. P. 355(b)(2)(A).[27] If the Business Court does not have jurisdiction of a removed action, the Business Court shall remand the action to the court in which the action was originally filed. TEX. GOV'T CODE § 25A.006(d); TEX. R. CIV. P. 355(f)(1).

## V. ANALYSIS

### A. The Parties cannot rely on Chapter 25A to establish the Business Court's authority to hear this action.

#### i. Chapter 25A—the most significant "change[] in law" made by H.B. 19—only "appl[ies] to civil actions commenced on or after September 1, 2024."

¶14 As Lone Star urges in its brief, "Section 8 should be read in harmony with the remainder of House Bill 19. . . ."[28] The Court concurs. "As with every question of statutory construction, our duty is to accurately articulate the meaning of the enacted text—here," of H.B. 19.[29] *Brown v. City of Houston*, 660 S.W.3d 749, 752 (Tex. 2023). Indeed, "H.B.

---

[27] The "Rules of Practice in the Business Court" are contained in Part III of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 352–60. For a discussion of the procedural background of the Rules' creation, see, for instance, Marcy Hogan Greer & Hon. Emily Miskel, *Proposed Rules for the New Texas Business Court*, 106 THE ADVOCATE 15 (Spring 2024).

[28] Lone Star Brief at 8.

[29] In this context, the enrolled version of H.B. 19 is the binding statute enacted by the Texas Legislature. *Jorrie v. Charles*, No. 24-BC04B-0001, 2024 Tex. Bus. 4, 2024 WL 4796436 at *3 (Tex. Bus. Ct. Nov. 7, 2024) (citing *Ass'n of Texas Pro. Educators v. Kirby*, 788 S.W.2d 827, 829 (Tex. 1990)). Accordingly, when analyzing the text of Chapter 25A to determine the Court's authority and jurisdiction to hear the case, the Court must apply Section 8 and presume that the enrolled bill accurately expresses the Texas Legislature's

19's plain 'text is the alpha and omega of the interpretive process.'" *Energy Transfer LP v. Culberson Midstream LLC*, No. 24-BC01B-0005, 2024 Tex. Bus. 1, 2024 WL 4648110, at *3 (Tex. Bus. Ct. Oct. 30, 2024) (citing *In re Panchakarla*, 602 S.W.3d 536, 541 (Tex. 2020); *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017)).

¶15    "When the text unambiguously answers a question, our inquiry ends." *Brown*, 660 S.W.3d at 752.  Long-settled Texas law dictates that "[e]very word of a statute is presumed to have been used for a purpose, and a cardinal rule of statutory construction requires that each sentence, clause, phrase and word be give[n] effect if reasonably possible." *Eddins-Walcher Butane Co. v. Calvert*, 298 S.W.2d 93, 96 (Tex. 1957).[30]

¶16    When Governor Greg Abbott signed H.B. 19 into law on June 9, 2023, the enrolled version of the Bill included two sections which are pertinent to this Opinion:

i.    Section 1, which vests the Court with its jurisdiction, and sets forth the text of the new Chapter 25A of the Texas Government Code,[31] and

ii.    Section 8, which states: "The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024."[32]

¶17    Lone Star argues that Section 8 would only limit the applicability of the changes in law made by H.B. 19 if they were said to apply "***only*** to civil actions commenced

---

intent. *XTO Energy, Inc. v. Houston Pipe Line Co.*, No. 24-BC11B-0008, 2024 Tex. Bus. 6 at ¶ 10 (Tex. Bus. Ct. Nov. 26, 2024); *see* TEX. GOV'T CODE § 311.029 (under the Code Construction Act, "the language of the enrolled bill version controls" over any subsequent printing of the statute).

[30] *See* Lone Star Brief at 8.

[31] Tex. H.B. 19 at § 1 (emphasis added); *see* TEX. GOV'T CODE § 25A.004 (entitled "Jurisdiction and Powers"). As noted above, Lone Star admits that Section 1 of H.B. 19 constitutes a change in law.  *See* Parties' Arguments, *supra* ¶ 8.ii; Lone Star Brief at 5–6.

[32] Tex. H.B. 19 at § 8.

on or after September 1, 2024."[33]  This is not a novel argument.  To date, no division of the Business Court has accepted this interpretation of Section 8.[34]  No effort has been made to distinguish this iteration of the "only" argument.  Thus, no reason exists for the Court to differ from its brethren.  On its face, Section 8 unambiguously limits the applicability of any "change in law" made by H.B. 19 to "civil actions commenced on or after September 1, 2024."[35]

¶18    The introduction of Section 1 [and the functional preamble to the text of Chapter 25A] reads: "Subtitle A, Title 2, Government Code, is **amended** by **adding** Chapter 25A to read as follows: . . . ."[36]  Putting aside its auxiliary purposes, the plain thrust of Section 1 and Chapter 25A is to **change Texas Law** to create the legal framework for the Business Court **and vest it with its jurisdiction**.[37]  By a simple page count, the text of Chapter

---

[33] *See* Lone Star Brief at 6–9.

[34] *Energy Transfer*, 2024 WL 4648110, at *3 (rejecting "only" argument, relying on the Negative Implication Canon); *Synergy Global Outsourcing, LLC v. Hinduja Global Solutions, Inc.*, No. 24-BC01B-0007, 2024 Tex. Bus. 2 at 9–11 (Tex. Bus. Ct. Oct. 31, 2024) (identical analysis); *Tema Oil and Gas Co. v. Etc Field Services, LLC*, No. 24-BC08B-0001, 2024 Tex. Bus. 3, 2024 WL 4796433, at *4 (Tex. Bus. Ct. Nov. 6, 2024) ("[T]here was no need for the legislature to insert 'only' or other limiting clarifying phrases in the applicability clause to expressly indicate that the new law did not apply retroactively to non-existing pending cases.  It would have been superfluous for the legislature to have done so."); *Winans v. Berry*, No. 24-BC04A-0002, 2024 Tex. Bus. 5, 2024 WL 4796435, at *2 (Tex. Bus. Ct. Nov. 7, 2024) (relying on the reasoning from *Tema Oil* to dispose of this argument); *XTO Energy*, 2024 Tex. Bus. 6 at ¶¶ 11–14 ("[T]his reading violates at least three canons of construction.").

[35] *See id.*; *Tema Oil*, 2024 WL 4796433, at *3 ("Section 8 is unambiguous and clear on its face. . . . In plain and common terms, Section 8, when construed in harmony with the other provisions of H.B. 19, expresses the legislative intent that cases filed before September 1, 2024, cannot be removed to the Business Court.").

[36] Tex. H.B. 19 at § 1 (emphasis added).

[37] *See id.*; Tex. Gov't Code § 25A.002–05.  Albeit solely for the purpose of context herein, Justice Evan A. Young has characterized the establishment of the Business Court in H.B. 19 [and the Fifteenth Court of Appeals in S.B. 1045] as "the most substantial **modification** of the judicial system of our state since 1891." Keenan Willard, *Texas Business Court [J]udges [S]worn in at Fort Worth Ceremony*, NBC DFW (September 19, 2024, 10:26 PM), https://www.nbcdfw.com/news/local/first-texas-business-court-judges-sworn-in/3650590/?os=qtft_2&ref=app (last visited Dec. 7, 2024) (emphasis added); *see also* DiSorbo, *supra* note 6, at 360 (referencing the creation of the Business Court as "[t]he most sweeping **change** to the state judiciary since the early 2000s tort reform.") (emphasis added).

11

25A occupies twenty-two of the twenty-seven pages of the enrolled version of H.B. 19.[38]

Certainly, Chapter 25A is the most significant "change[] in law" in H.B. 19, both in terms of volume and substance.[39]

¶19    Because the present lawsuit commenced[40] long before September 1, 2024, the Court holds that the Parties may not rely on the provisions of Chapter 25A to justify subject-matter jurisdiction in the Business Court, regardless of how innovative their arguments may be.  Therefore, the Court need not address any of the Parties' arguments concerning the interpretation of Texas Government Code Section 25A.004(d).  This conclusion is consistent with the consensus view of Section 8 in the Business Court.[41]

### ii.  The Parties may not rely on the doctrines of waiver, estoppel, or invited error to create subject-matter jurisdiction in the Business Court.

¶20    In the alternative, the Parties argue that "[t]he fact that a statutory 'effective date' exists in a bill does not mean that that date cannot be waived."[42]  The Parties wish for

---

[38] This portion of the analysis refers to the enrolled version of the Bill which is posted to the Texas Legislature's website.  Tex. H.B. 19, 88th Leg., R.S. (2023) "Text," TEXAS LEGISLATURE ONLINE, https://capitol.texas.gov/BillLookup/Text.aspx?LegSess=88R&Bill=HB19 (last visited Dec. 3, 2024).

[39] *See Jorrie*, 2024 WL 4796436 at *2 ("The Act's most substantial change in the law is the addition of Chapter 25A, which includes the provisions permitting removal to the Business Court."); *Energy Transfer*, 2024 WL 4648110, at *3 ("Since chapter 25A in its entirety is a change in Texas law, it follows that § 25A.006's removal provisions also change Texas law."); *Tema Oil*, 2024 WL 4796433, at *4 ("Because Chapter 25A in its entirety is a change of law, it follows logically that Section 25A.006's removal provisions are changes in law, too."); *Winans*, 2024 WL 4796435, at *2 ("This argument ignores the plain language of the enabling legislation, which expressly states the changes in this law, i.e. Chapter 25A and its removal procedure, apply to cases commenced on or after September 1, 2024."); *XTO Energy*, 2024 Tex. Bus. 6 at ¶ 13 ("Thus, the Act's express statement that its changes in law apply to 'cases commenced on or after September 1, 2024' necessarily implies a reverse inference: that the change in law—removal, in this instance—does not apply to cases that were on file before that date.").

[40] The Parties do not contest that the commencement date for this action was prior to September 1, 2024.  For a discussion of the meaning of "commenced" in the context of H.B. 19, see *Tema Oil*, 2024 WL 4796433, at *3; *Jorrie*, 2024 WL 4796436 at *2.

[41] *See generally* authorities cited, *supra* note 39.

[42] Lone Star Brief at 10, n. 3.

the Court to condone a waiver, or invitation of error concerning the "effective date" provision of Section 8, and thereby maintain jurisdiction over this case:

> The parties have entered into the Subsequent Agreement, jointly requesting that the Court adjudicate this dispute. [H.B. 19's] effective date is not "absolute," "nonforfeitable," or "nonwaivable." To the contrary, the parties jointly and expressly invite the Court to adjudicate this dispute.[43]

¶21 To justify this argument, the Parties cite *Prystash v. State*, 3 S.W.3d 522 (Tex. Crim. App. 1999), which overruled *Powell v. State*, 897 S.W.2d 307, 317 (Tex. Crim. App. 1994), by employing the doctrine of "invited error." The *Prystash* court held that since a criminal defendant had requested a certain jury instruction, he was estopped from complaining about its defectiveness on appeal. *Prystash*, 3 S.W.3d at 529–32. While there are clear and binding authorities addressing waiver, estoppel, and invited error surrounding a civil court's subject-matter jurisdiction,[44] the Parties focus on *Prystash* because the portion of the relevant statute which the criminal defendant waived was its "effective date" provision.[45]

¶22 At the hearing on this matter, the Parties stated, "The *Prystash* case is very clear that an effective date in a statute is not an ***unwaivable . . . always appealable subject-matter issue***."[46] Indeed, "[s]ubject-matter jurisdiction is an issue that may be raised for the

---

[43] Joint Brief at 8.

[44] *See, e.g.,* authorities cited, *infra* ¶ 22.

[45] *See Prystash*, 3 S.W.3d at 529–32. At the hearing, the Parties posited, "if in *Prystash*[,] a party can tell a Court to apply a statute outside of its effective date, and that is enforceable in the capital murder context, it is certainly enforceable in the context where you have two publicly traded companies in a multiple-hundred-million-dollar dispute entering into a seven-page long agreement that they want this case to be adjudicated by this Court." Transcript of Record at 13. Nevertheless, the law remains clear that the factual context of an attempted waiver remains irrelevant if the waiver is alleged to confer subject-matter jurisdiction. *See* authorities cited, *infra* ¶ 22.

[46] *Id.* at 12 (emphasis added).

first time on appeal; [and] it may not be waived by the parties." *Tex. Ass'n of Bus.*, 852 S.W.2d at 445; *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000) ("[S]ubject-matter jurisdiction is a power that exists by operation of law only, and cannot be conferred upon any court by consent or waiver.") (internal quotations omitted); *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012) (explaining that a judgment is void when a court lacks subject-matter jurisdiction). Likewise, the doctrine of invited error cannot serve as the basis for subject-matter jurisdiction where it otherwise does not exist. *Interest of A.F.*, 653 S.W.3d 730, 745 (Tex. App.—Fort Worth 2019, no pet.) (citing *In re Crawford & Co.*, 458 S.W.3d 920, 928 n. 7 (Tex. 2015)). Thus, the success or failure of the Parties' waiver and invited error arguments turns on the Court's determination of whether Section 8 of H.B. 19 is a jurisdictional provision in this context.

¶23    The Court finds that Section 8 of H.B. 19 unambiguously operates as a jurisdictional provision when applied to Texas Government Code Section 25A.004 (entitled "Jurisdiction and Powers").[47] Therefore, the Court holds that parties to a "civil action[] commenced" before September 1, 2024 may not waive Section 8's "effective date" provision in order to establish subject-matter jurisdiction in the Business Court under Section 25A.004.

---

[47] *See Jorrie*, 2024 WL 4796436, at *3 ("The court concludes that Section 8 is jurisdictional."); ANALYSIS, *supra* at Section A.i ("Chapter 25A—the most significant 'change[] in law' made by H.B. 19—only 'appl[ies] to civil actions commenced on or after September 1, 2024.'").

**iii. Because the text of S.B. 1045 explicitly provides for the transfer of pre-September 1, 2024 appeals, the Parties' analysis of its effective date provision does not withstand scrutiny.**

¶24    At the hearing, the Parties added an argument that Section 8 is not a jurisdictional limitation on this Court by comparing it to S.B. 1045, which created the Fifteenth Court of Appeals:

> Senate Bill 1045, Section 1.1[5], has an almost identical effective date provision that says the changes in law made by this act, Senate Bill No. 1045, apply to appeals perfected on or after September 1st, 2024. And as this Court knows, when that court began to exist on September 1st, 2024, all of the existing appeals that were within that court's jurisdiction, were transferred to that court. And that court had subject-matter jurisdiction to adjudicate those appeals and has been adjudicating those appeals and the constitutionality of that court has been upheld by the Texas Supreme Court. And so Section 8 as an effective date is not a subject-matter limitation on the Court.[48]

¶25    The Court recognizes that Section 1.15(a) of S.B. 1045 states as follows: "The changes in law made by this Act apply to appeals perfected on or after September 1, 2024."[49] However, brief scrutiny of Section 1.15 reveals a section (b), which was neither discussed by the Parties at oral argument nor mirrored in H.B. 19's Section 8:

> (b) On September 1, 2024, all cases pending in other courts of appeal that were filed on or after September 1, 2023, and of which the Court of Appeals for the Fifteenth Court of Appeals District has exclusive intermediate appellate jurisdiction are transferred to the Court of Appeals for the Fifteenth Court of Appeals District.[50]

---

[48] Transcript of Record at 11–12.
[49] Tex. S.B. 1045, § 1.15(a), 88th Leg., R.S. (2023).
[50] *Id.* at § 1.15(b).

Evidently, Section 1.15(b)—and not Section 1.15(a)—governs the transfer of pre-September 1, 2024 appeals. No equivalent language appears in H.B. 19's Section 8. Thus, the Court does not find this argument persuasive.

### iv. The Parties' arguments regarding judicial efficiency and the consequences of remand do not affect the Court's lack of subject-matter jurisdiction.

¶26　As noted above, the Parties argue that because they have already agreed to non-suit and refile in the Business Court, it would be sensible and efficient for the Court to simply maintain jurisdiction of the case.[51] Of course, a policy of preferring efficient processes cannot supersede the bedrock requirement of subject-matter jurisdiction. To the contrary, because any judgment rendered by a court without subject-matter jurisdiction would be void,[52] the dedication of any further Court resources to this matter (prior to non-suit and refiling) would be, at a minimum, a misallocation.

## VI. CONCLUSION

¶27　The Parties have failed to establish that the Court has subject-matter jurisdiction over this case. *See* TEX. R. CIV. P. 355(b)(2)(A). As a result, the Court is required to remand this case to the district court. *See* TEX. GOV'T CODE § 25A.006(d) ("If the business court does not have jurisdiction of the [removed] action, the business court *shall* remand the action to the court in which the action was originally filed.") (emphasis added). Therefore, subject to the Court's stay issued in Paragraph 30 below, it is

---

[51] Joint Brief at 5–7 (Argument Section I.B, entitled "Remanding This Case Will [N]ot Keep This Dispute [O]ut of Texas Business Court."). According to the Parties, a remand would cause difficulties with live motions and discovery. *Id.*
[52] *See* ANALYSIS, *supra* ¶ 22.

**ORDERED** that the Business Court Clerk shall remand this cause to the 61st Judicial District Court of Harris County, Texas.

¶28   In addition, the Court grants the Parties' request for a permissive interlocutory appeal under Texas Civil Practice & Remedies Code Section 51.014(d). The Court grants the request because the legal issue considered by this Court—whether "a civil action that was commenced before September 1, 2024 [may] be removed to Business Court where the parties entered into a subsequent agreement expressly consenting to the jurisdiction of the Business Court"—is a controlling question of law as to which there is substantial ground for difference of opinion.[53]   Additionally, a determination by the Court of Appeals of the legal issue here would materially advance the ultimate termination of this litigation.[54]   On this matter, the Court echoes the Parties' argument—a permissive interlocutory appeal "advance[s] the ultimate termination of this litigation by giving both parties, all parties, certainty as to the jurisdictional issues before [the Court], whether we're confronting them following a remand and a nonsuit and a refiling or following a permissive appeal. . . .[N]ot only will it give certainty to litigants around the state, but . . . it will give . . . certainty to these parties that there's not some jurisdictional trap that [they] might be confronted with on appeal."[55]

---

[53] *See generally* Joint Brief at 11–12 (permissive appeal briefing).  It appears that a meaningful number of Business Court litigants believe that pre-September 1, 2024 cases may be removed.  A significant proportion of the cases removed to the Business Court to date were on file in the district courts prior to September 1, 2024.

[54] *Id.*

[55] Transcript of Record at 40; *see also* TEX. R. CIV. P. 168 ("The permission . . . must state why an immediate appeal may materially advance the ultimate termination of the litigation.").

17

¶29    This Court is cognizant of the Section 51.014(d) case law. Given that the Texas Business Court is in its nascent stages, the Court certifies the permissive interlocutory appeal to provide the Fifteenth Court of Appeals an opportunity to scrutinize this seminal issue, give guidance to the Business Court, and set clear precedent concerning the removal of actions which were pending prior to September 1, 2024.

¶30    Further, to the extent that the Court has the authority to do so, the Court **STAYS** the remand order contained herein pending the resolution of the Parties' permissive interlocutory appeal under Texas Civil Practice & Remedies Code Section 51.014(e).

SO ORDERED.

_____
Hon. Sofia Adrogué
Texas Business Court, Eleventh Division

DATED: December 20, 2024

18

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 95577014
Filing Code Description: No Fee Documents
Filing Description: Opinion and Order
Status as of 12/23/2024 8:40 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Cindy Hickman | | cindy.hickman@nortonrosefulbright.com | 12/20/2024 8:44:25 PM | SENT |
| Rafe AronSchaefer | | rafe.schaefer@nortonrosefulbright.com | 12/20/2024 8:44:25 PM | SENT |
| Andrew Price | | andrew.price@nortonrosefulbright.com | 12/20/2024 8:44:25 PM | SENT |
| Parth S.Gejji | | pgejji@beckredden.com | 12/20/2024 8:44:25 PM | SENT |
| Thomas Ganucheau | 784104 | tganucheau@beckredden.com | 12/20/2024 8:44:25 PM | SENT |
| Fields Alexander | 783528 | falexander@beckredden.com | 12/20/2024 8:44:25 PM | SENT |
| Abraham Chang | | abraham.chang@nortonrosefulbright.com | 12/20/2024 8:44:25 PM | SENT |
| Garrett Brawley | 24095812 | gbrawley@beckredden.com | 12/20/2024 8:44:25 PM | SENT |
| Angelina Martinez | | angelina.martinez@nortonrosefulbright.com | 12/20/2024 8:44:25 PM | SENT |
| Cassie Maneen | | cmaneen@beckredden.com | 12/20/2024 8:44:25 PM | SENT |
| Timothy Shinn | | timothy.shinn@nortonrosefulbright.com | 12/20/2024 8:44:25 PM | SENT |
| Ta'chelle Jones | | Tachelle.jones@nortonrosefulbright.com | 12/20/2024 8:44:25 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 12/20/2024 8:44:25 PM | SENT |